FILED
2020 Aug-18  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BANK OF THE WEST,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **CHRISTOPHER A.** ) | |
| **MONTALBANO; DEBORAH F.** ) | **Case No.: 2:20-cv-39-AMM** |
| **MONTALBANO; GUS A.** ) | |
| **MONTALBANO; LSA CORP.;** ) | |
| **LAND WORK TRACTOR &** ) | |
| **EQUIPMENT LLC; and LIMA** ) | |
| **SIERRA ALPHA LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on a motion for partial summary judgment filed by Plaintiff Bank of the West ("the Bank"), Doc. 31, which asserts that it is entitled to summary judgment against defendant Christopher Montalbano as to Counts One, Four, and Five of the complaint; against defendant Deborah Montalbano as to Count Three; and against defendant Gus Montalbano as to Count Six. The Montalbanos did not file a response to the motion. For the reasons stated below, the motion is **GRANTED** except as to the request for attorney's fees. Partial summary judgments will be entered contemporaneously with this memorandum opinion.

# I. BACKGROUND

The Initial Order provides that "[a]ll material facts set forth in the statement" of undisputed facts in a party's motion for summary judgment "will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." Doc. 22 at 17. The Montalbanos did not controvert the Bank's statement of undisputed facts in a responsive filing, so the facts set forth in the Bank's statement are deemed admitted by the Montalbanos. Additionally, as explained below, the court finds that the Bank's statement is substantiated by the evidence before the court.

Viewed in the light most favorable to the Montalbanos, these are the undisputed facts material to the Bank's motion:

## A. Count One Against Christopher Montalbano

On November 26, 2016, Christopher Montalbano entered into a valid and binding contract with the Bank—namely, a Promissory Note and a Consumer Security Agreement, with related loan documents (collectively, the "Loan Agreement"), identified as Loan No. 849431352—in connection with his purchase of a 2016 Mastercraft Xstar Power Boat. Doc. 32-1 at 11–13. Pursuant to the Loan Agreement for Loan No. 849431352, Christopher Montalbano agreed and was obligated to pay principal in the amount of $103,685.00 plus interest at a rate of 4.443% in periodic installments until the loan obligation was paid in full. Doc. 32-1

2

at 8. Christopher Montalbano agreed to pay this loan in 240 payments of $653.87 per month, agreeing, "My first payment is due January 10, 2017, and all subsequent payments are due on the same day of each month after that." *Id*. The Bank delivered the loan proceeds as required by this agreement, as evidenced by a check issued to LSA Corporation, the entity Christopher Montalbano designated to receive the loan proceeds. Doc. 32-1 at 15, 44.

Christopher Montalbano failed to make a required payment due on January 10, 2020, with respect to Loan No. 849431352. Doc. 32-6 at 9 ¶ 4; Doc. 32-9 at 1. In its requests for admission, the Bank asked Christopher Montalbano, "Admit that you defaulted on your January 10, 2020 payment and that no payments have been made on your account related to Agreement One [Loan No. 849431352] since December 24, 2019." Doc. 32-6 at 9 ¶ 4. Christopher Montalbano did not respond to this request within 30 days; accordingly, this fact is deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3). *See* Doc. 32 at 5 n.1; *see also* Doc. 33 at 5 n.1. The Loan Agreement states that in the event of default, the Bank may declare all indebtedness immediately due and payable, without notice. Doc. 32-1 at 8, 12. In the Bank's complaint, the Bank declared the balance immediately due and payable for this loan. Doc. 1 ¶ 89. The balance due and payable by Christopher Montalbano pursuant to Loan Agreement No. 849431352, as of June 3, 2020, is $96,209.60. Doc. 32-14 ¶ 3.

**B. Count Four Against Christopher Montalbano**

On July 25, 2019, Christopher Montalbano entered into a valid and binding contract with the Bank—namely, a Promissory Note and a Consumer Security Agreement, with related loan documents (collectively, the "Loan Agreement"), identified as Loan No. 849580913—in connection with his purchase of a 2019 Mastercraft X24 Power Boat. Doc. 32-2 at 13–15. Pursuant to the Loan Agreement for Loan No. 849580913, Christopher Montalbano agreed and was obligated to pay principal in the amount of $152,019.25 plus interest at a rate of 5.316% in periodic installments until the loan obligation was paid in full. Doc. 32-2 at 10. Christopher Montalbano agreed to pay this loan in 240 payments of $1,032.11 per month, agreeing specifically, "My first payment is due September 8, 2019, and all subsequent payments are due on the same day of each month after that." *Id.* The Bank delivered the loan proceeds as required by this agreement, as evidenced by a check issued to Land Work Tractor & Equipment, LLC, the entity Christopher Montalbano designated to receive the loan proceeds. Doc. 32-2 at 17, 28.

Christopher Montalbano failed to make a required payment due on January 8, 2020, with respect to Loan No. 849580913. Doc. 32-6 at 10 ¶ 10; Doc. 32-10 at 1. Christopher Montalbano failed to timely respond to the Bank's request to "[a]dmit that [he] defaulted on [his] January 8, 2020 payment and that no payments have been made on [his] account related to Agreement Two [Loan No. 849580913] since

4

February 4, 2020." Doc. 32-6 at 10 ¶ 10; *see also* Doc. 33 at 5 n.2. Accordingly, this fact is deemed admitted under Rule 36(a)(3). Christopher Montalbano has not made any payments with respect to Loan No. 849580913 since February 4, 2020. Doc. 32-6 at 10 ¶ 10; Doc. 32-10 at 1. The Loan Agreement states that in the event of default, the Bank may declare all indebtedness immediately due and payable, without notice. Doc. 32-2 at 10, 14. In the Bank's complaint, the Bank declared the balance immediately due and payable for this loan. Doc. 1 at ¶ 110. The balance due and payable by Christopher Montalbano pursuant to Loan Agreement No. 849580913, as of June 3, 2020, is $155,090.82. Doc. 32-14 ¶ 4.

### C. Count Five Against Christopher Montalbano

On August 6, 2019, Lima Sierra Alpha, LLC and Christopher Montalbano entered into a valid and binding contract with the Bank—namely, a Promissory Note and a Consumer Security Agreement, with related loan documents (collectively, the "Loan Agreement"), identified as Loan No. 849583145—in connection with the purchase of a 2019 American Eagle 45T Motor Home. Doc. 32-3 at 14–19. On August 6, 2019, Christopher Montalbano signed a Commercial Guaranty for Loan No. 849583145. Doc. 32-3 at 32–34. Pursuant to the Loan Agreement for Loan No. 849583145, Lima Sierra Alpha, LLC and Christopher Montalbano, agreed and were obligated to pay principal in the amount of $500,009.00 plus interest at a rate of 5.335% in periodic installments until the loan obligation was paid in full.

Doc. 32-3 at 12. Lima Sierra Alpha, LLC and Christopher Montalbano agreed to pay this loan in 240 payments of $3,401.25 per month, agreeing specifically, "My first payment is due September 20, 2019, and all subsequent payments are due on the same day of each month after that." *Id.* The Bank delivered the loan proceeds as required by this agreement, as evidenced by a check issued to Motorhome Specialist, the entity Christopher Montalbano designated to receive the loan proceeds. Doc. 32-3 at 20, 63.

Lima Sierra Alpha, LLC and Christopher Montalbano failed to make a required payment due on December 20, 2019, with respect to Loan No. 849583145. Doc. 32-6 at 10 ¶ 16; Doc. 32-11 at 2. Christopher Montalbano failed to timely respond to Plaintiff's request to "[a]dmit that [he] defaulted on [his] December 20, 2019 payment and that no payments have been made on [his] account related to Agreement Three [Loan No. 849583145] since February 20, 2020." Doc. 32-6 at 10 ¶ 16; *see also* Doc. 33 at 6 n.3. Accordingly, this fact is deemed admitted under Rule 36(a)(3). Lima Sierra Alpha, LLC and Christopher Montalbano have not made any payments with respect to Loan No. 849583145 since February 20, 2020. Doc. 32-6 at 10 ¶ 16; Doc. 32-11 at 1.

According to the Commercial Security Agreement for Loan No. 849583145, "All obligations of Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each

Grantor signing below is responsible for all obligations in this Agreement."
Doc. 32-3 at 17. Christopher Montalbano not only signed the agreement on behalf
of Lima Sierra Alpha, LLC and himself individually, he also signed a Commercial
Guaranty in which he agreed to "absolutely and unconditionally guarantee full and
punctual payment and satisfaction of the Indebtedness of Borrower [Lima Sierra
Alpha, LLC and Christopher Montalbano] . . . and the performance and discharge of
all Borrower's obligations under the Note and the Related Documents." Doc. 32-3
at 32, 34.

The Loan Agreement states that in the event of default, the Bank may declare
all indebtedness immediately due and payable, without notice. Doc. 32-3 at 12, 16.
In the Bank's complaint, the Bank declared the balance immediately due and payable
for this loan. Doc. 1 ¶ 117. The balance due and payable by Christopher Montalbano
pursuant to Loan Agreement No. 849583145, as of June 3, 2020, is $509,172.15.
Doc. 32-14 ¶ 5.

### D. Count Three against Deborah Montalbano

On February 12, 2019, Deborah Montalbano entered into a valid and binding
contract with the Bank—namely, a Promissory Note and a Consumer Security
Agreement, with related loan documents (collectively, the "Loan Agreement"),
identified as Loan No. 849548884—in connection with her purchase of a 2017
Mastercraft X46 Premium Power Boat. Doc. 32-4 at 11–13. Pursuant to the Loan

Agreement for Loan No. 849548884, Deborah Montalbano agreed and was obligated to pay principal in the amount of $109,415.25 plus interest at a rate of 5.204% in periodic installments until the loan obligation was paid in full. Doc. 32-4 at 8. Deborah Montalbano agreed to pay this loan in 240 payments of $736.11 per month, agreeing specifically, "My first payment is due March 29, 2019, and all subsequent payments are due on the same day of each month after that." *Id.* The Bank delivered the loan proceeds as required by this agreement, as evidenced by a check issued to LSA Autos, the entity Deborah Montalbano designated to receive the loan proceeds. Doc. 32-4 at 4, 35.

Deborah Montalbano failed to make a required payment due on January 29, 2020, with respect to Loan No. 849548884. Doc. 32-7 at 7 ¶ 4; Doc. 32-12 at 2. Deborah Montalbano failed to timely respond to Plaintiff's request to "[a]dmit that [she] defaulted on [her] January 29, 2020 payment and that no payments have been made on [her] account . . . since December 25, 2019." Doc. 32-7 at 7 ¶ 4; *see also* Doc. 33 at 7 n.4. Accordingly, this fact is also deemed admitted under Rule 36(a)(3). Deborah Montalbano has not made any payments with respect to Loan No. 849548884 since December 25, 2019. Doc. 32-7 at 7 ¶ 4; Doc. 32-12 at 1–2.

The Loan Agreement states that in the event of default, the Bank may declare all indebtedness immediately due and payable, without notice. Doc. 32-4 at 8, 12. In the Bank's complaint, the Bank declared the balance immediately due and payable

8

for this loan. Doc. 1 ¶ 103. The balance due and payable by Deborah Montalbano pursuant to Loan Agreement No. 849548884, as of June 3, 2020, is $109,592.73. Doc. 32-14 ¶ 6.

### E. Count Six Against Gus Montalbano

On May 12, 2015, Gus Montalbano entered into a valid and binding contract with the Bank—namely, a Promissory Note and a Consumer Security Agreement, with related loan documents (collectively, the "Loan Agreement"), identified as Loan No. 849350186—in connection with his purchase of a 2015 Mastercraft CO X46 Power Boat and 2015 Mastercraft X46 Trailer. Doc. 32-5 at 12–14. Pursuant to the Loan Agreement for Loan No. 849350186, Gus Montalbano agreed and was obligated to pay principal in the amount of $115,670.53 plus interest at a rate of 4.094% in periodic installments until the loan obligation was paid in full. Doc. 32-5 at 9. Gus Montalbano agreed to pay this loan in 240 payments of $707.86 per month, agreeing specifically, "My first payment is due June 26, 2015, and all subsequent payments are due on the same day of each month after that." *Id.* The Bank delivered the loan proceeds as required by this agreement, as evidenced by a check issued to Rambo Marine, the entity Gus Montalbano designated to receive the loan proceeds. Doc. 32-5 at 16, 35.

Gus Montalbano failed to make a required payment due on December 26, 2019 with respect to Loan No. 849350186. Doc. 32-8 at 7 ¶ 4; Doc. 32-13 at 1. Gus

9

Montalbano failed to timely respond to the Bank's request to "[a]dmit that [he] defaulted on [his] December 26, 2019 payment and that no payments have been made on [his] account . . . since December 24, 2019." Doc. 32-8 at 7 ¶ 4; *see also* Doc. 33 at 8 n.5. Accordingly, this fact is deemed admitted under Rule 36(a)(3). Gus Montalbano has not made any payments with respect to Loan No. 849350186 since December 24, 2019. Doc. 32-8 at 7 ¶ 4; Doc. 32-13 at 1.

The Loan Agreement states that in the event of default, the Bank may declare all indebtedness immediately due and payable, without notice. Doc. 32-5 at 9, 13. In the Bank's complaint, the Bank declared the balance immediately due and payable for this loan. Doc. 1 ¶ 124. The balance due and payable by Gus Montalbano pursuant to Loan Agreement No. 849350186, as of June 3, 2020, is $101,095.12. Doc. 32-14 ¶ 7.

**II. STANDARD OF REVIEW**

Summary judgment is appropriate when the party moving for summary judgment establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has carried its burden, Rule 56 requires that the nonmoving party "go beyond the pleadings" and establish that there is a material fact in genuine dispute. *Celotex*, 477 U.S. at 324–25; *see also*

Fed. R. Civ. P. 56(c)(1)(A). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, LLC, 843 F.3d 1295, 1303 (11th Cir. 2016) (internal quotation marks omitted). To show that the material fact is in "genuine" dispute, the nonmoving party must identify evidence sufficient for a reasonable jury to return a verdict in its favor. *Id*.

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (citation and quotation marks omitted).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). The court need not consider material not cited in the parties' briefs. *See* Fed. R. Civ. P. 56(c)(3). If a motion for summary judgement is "well supported" and unopposed, it is properly granted. *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988).

11

## III. ANALYSIS

The Bank moves for summary judgment on five breach-of-contract claims against the Montalbanos: Counts One, Three, Four, Five, and Six. The claims are based on the Montalbanos' breach of separate promissory notes with materially identical terms, and the Bank seeks damages against each Montalbano in specified amounts. Doc. 33 at 20.

At the threshold, the court must determine what law governs enforcement of the promissory notes. Each promissory note contains a provision stating: "This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California." Doc. 32-1 at 8; Doc. 32-2 at 10; Doc. 32-3 at 12; Doc. 32-4 at 8; Doc. 32-5 at 9. Nevertheless, the Bank assumes that Alabama law governs. *See* Doc. 33 at 9.

The court has diversity jurisdiction to decide this case. Doc. 1 ¶ 11. A court sitting in diversity applies the choice-of-law provisions of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941). Alabama allows parties to agree that another state's law governs their contract so long as the application of that state's law would not violate Alabama public policy. *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506-07 (Ala. 1991). The Bank has not argued that applying California law here would violate Alabama public policy. Therefore, pursuant to the

12

parties' agreement, California law governs the breach of contract claims. Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

### A. Count One Against Christopher Montalbano

As to Count One, the Bank's motion establishes that: (1) the Bank and Christopher Montalbano entered into a contract for Loan No. 849431352, Doc. 32-1 at 8; (2) the Bank performed under the contract by delivering the loan proceeds, Doc. 32-1 at 15, 44; (3) Christopher Montalbano breached the contract when he failed to make a payment when due on January 10, 2020, Doc. 32-6 at 9 ¶ 4; Doc. 32-9 at 1; Doc. 32-6 at 9 ¶ 4; and (4) as of June 3, 2020, the Bank damages are $96,209.60, Doc. 32-14 ¶ 3. Therefore, the Bank is entitled to judgment as a matter of law as to Count One.

### B. Count Four Against Christopher Montalbano

As to Count Four, the Bank's motion establishes that: (1) the Bank and Christopher Montalbano entered into a contract for Loan No. 849580913, Doc. 32-2 at 10; (2) the Bank performed under the contract by delivering the loan proceeds, Doc. 32-2 at 17, 28; (3) Christopher Montalbano breached the contract when he failed to make a payment when due on January 8, 2020, Doc. 32-6 at 10 ¶ 10; Doc.

13

32-10 at 1; Doc. 32-6 at 10 ¶ 10; *see also* Doc. 33 at 5 n.2; and (4) as of June 3, 2020, the Bank's damages are $155,090.82, Doc. 32-14 ¶ 4. Therefore, the Bank is entitled to judgment as a matter of law as to Count Four.

### C. Count Five Against Christopher Montalbano

As to Count Five, the Bank's motion establishes that: (1) the Bank and Christopher Montalbano entered into a contract for Loan No. 849583145, Doc. 32-3 at 12; (2) that the Bank performed under the contract by delivering the loan proceeds, Doc. 32-3 at 20, 63; (3) Christopher Montalbano breached the contract when he failed to make a payment when due on December 20, 2019, Doc. 32-6 at 10 ¶ 16; Doc. 32-11 at 2; Doc. 32-6 at 10 ¶ 16; *see also* Doc. 33 at 6 n.3; and (4) as of June 3, 2020, the Bank's damages are $509,172.15, Doc. 32-14 ¶ 5. Therefore, the Bank is entitled to judgment as a matter of law as to Count Five.

### D. Count Three against Deborah Montalbano

As to Count Three, the Bank's motion establishes that: (1) the Bank and Deborah Montalbano entered into a contract for Loan No. 849548884, Doc. 32-4 at 8; (2) the Bank performed under the contract by delivering the loan proceeds, Doc. 32-4 at 4, 35; (3) Deborah Montalbano breached the contract when she failed to make a payment when due on January 29, 2020, Doc. 32-7 at 7 ¶ 4; Doc. 32-12 at 2; Doc. 32-7 at 7 ¶ 4; *see also* Doc. 33 at 7 n.4; and (4) as of June 3, 2020, the Bank's

14

damages are $109,592.73, Doc. 32-14 ¶ 6. Therefore, the Bank is entitled to judgment as a matter of law as to Count Three.

### E. Count Six Against Gus Montalbano

As to Count Six, the Bank's motion establishes that: (1) the Bank and Gus Montalbano entered into a contract for Loan No. 849350186, Doc. 32-5 at 9; (2) the Bank performed under the contract by delivering the loan proceeds, Doc. 32-5 at 16, 35; (3) Gus Montalbano breached the contract when he failed to make a payment when due on December 26, 2019, Doc. 32-8 at 7 ¶ 4; Doc. 32-13 at 1; Doc. 32-8 at 7 ¶ 4; *see also* Doc. 33 at 8 n.5; and (4) as of June 3, 2020, the Bank's damages are $101,095.12, Doc. 32-14 ¶ 7. Therefore, the Bank is entitled to judgment as a matter of law as to Count Six.

### F. Attorney's Fees

Each promissory note contains the following provision: "Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees . . . . I also will pay any court costs, in addition to all other sums provided by law." Doc. 32-1 at 8; Doc. 32-2 at 10; Doc. 32-3 at 12; Doc. 32-4 at 8; Doc. 32-5 at 9. The Bank argues that it is entitled to "attorneys' fees and

expenses against Defendants in the amount of $23,834.00, as provided in for in the loan agreements." Doc. 33 at 20.

As explained above, California law governs enforcement of the loan agreements. California law provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." CAL. CIV. CODE § 1717(a). The law further provides: "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." *Id.* "[T]he trial court may determine the cost award for a prevailing party by examining the reason each cost was incurred, whether the cost was reasonably necessary to incur in the litigation, and the reasonableness of the amount of the cost incurred . . . ." *Quiles v. Parent*, 28 Cal. App. 5th 1000, 1017 (2018). "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action." *Thompson Pac. Constr., Inc. v. City of Sunnyvale*, 155 Cal. App. 4th 525, 555 (2007) (internal citation and quotation mark omitted).

16

For the reasons stated above, the Bank is the party prevailing on each contract. According to the Bank, its proposed fee award, $23,834.00, is "[t]he total attorneys' fees and expenses accrued . . . [as of June 17, 2020] in connection with enforcement of the . . . loan agreements." Doc. 33 at 20 (citing Doc. 32-14 ¶ 8). The Bank assumes that the Montalbanos are jointly and severally liable for the total attorney's fees accrued in this case, but that is not so: each promissory note makes each individual defendant liable only for the attorney's fees accrued "to help collect **this** Note . . . ." Doc. 32-1 at 8; Doc. 32-2 at 10; Doc. 32-3 at 12; Doc. 32-4 at 8; Doc. 32-5 at 9 (emphasis added). Moreover, the breach of contract claims are only part of the Bank's complaint, which also asserts claims for other causes of action and against other defendants. *See* Doc. 1. The Bank's motion provides neither evidence nor argument as to what portion of the $23,834.00 fee it seeks is attributable to the Bank's costs to collect on each promissory note against each defendant. *See e.g.*, *Quiles*, 28 Cal. App. 5th at 1015 (describing allocation issues where attorney's fees involve several parties). The motion also fails to state the hours worked, hourly rate, or any other factor relevant to the reasonableness (or accuracy) of the $23,834.00 amount. Therefore, the request for attorney's fees is denied without prejudice to the Bank's later opportunity to make a properly supported motion for fees.

17

## IV. CONCLUSION

For the foregoing reasons, the Bank's motion for partial summary judgment, Doc. 31, is **GRANTED** except as to its request for attorney's fees. A partial summary judgment against each Montalbano as to the relevant count will be entered contemporaneously with this memorandum opinion.

**DONE** and **ORDERED** this 18th day of August, 2020.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE